UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | SEALED INDICTMENT |
|---|---|
| v. | 25 Cr. |
| YECHIAL MICHAEL LICHTENSTEIN, and TOBY MOSKOVITS, | 25 CRIM 501 |
| Defendants. | |

## COUNT ONE
(Conspiracy to Commit Wire and Bank Fraud)

The Grand Jury charges:

Overview

1. From at least in or about March 2020 through at least in or about April 2022, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, and others known and unknown, engaged in a fraudulent scheme to obtain and attempt to obtain Government, or Government-guaranteed, loans through loan programs of the United States Small Business Administration (the "SBA") designed to provide relief to small businesses during the COVID-19 pandemic, namely the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan ("EIDL") Program. After obtaining funds from these programs, LICHTENSTEIN and MOSKOVITS used most of the funds for purposes that were not permitted by the programs and lied about doing so. In total, LICHTENSTEIN and MOSKOVITS fraudulently obtained at least approximately $1.9 million in PPP and EIDL funds, and they attempted to obtain at least an additional approximately $3.1 million in PPP and EIDL funds.

## The Loan Programs

2. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to millions of Americans who suffered the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of hundreds of billions of dollars in loans to small businesses for job retention and certain other expenses through the SBA's Paycheck Protection Program ("PPP") and additional billions for the separate Economic Injury Disaster Loan program ("EIDL"). Businesses applying for loans under the PPP and EIDL program were required to confirm the accuracy of their loan statements.

3. The PPP was overseen by the SBA, which had authority over all PPP loans, but individual PPP loans were issued by approved commercial lenders, who would receive and process PPP applications and supporting documentation. PPP loan proceeds were required to be used by businesses on payroll costs, mortgage interest, rent, and/or utilities, among other specified expenses. The PPP allowed the interest and principal to be forgiven if businesses spent the proceeds on those expenses under certain conditions. Borrowers through the PPP were also eligible to apply for loan forgiveness once all loan proceeds for which forgiveness was requested had been used.

4. Loans under the EIDL were made directly by the SBA. The loans could be used only for working capital and other normal operating expenses of the entity that received the loan.

## Relevant Entities and Individuals

5. At all times relevant to this Indictment, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, owned and operated several companies involved in real estate, including a company (the "Hotel Management Company") whose business consisted of

managing an upscale hotel located in Williamsburg, Brooklyn (the "Hotel") and a company (the "Hotel Ownership Company") that owned the same hotel.

6. At all times relevant to this Indictment, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, were owners and operators of, among other companies, the Hotel Management Company and the Hotel Ownership Company.

### The Fraudulent Scheme

7. From in or about March 2020 through at least in or about April 2022, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, engaged in a scheme to fraudulently obtain at least approximately $5 million in PPP and EIDL loans.

### The PPP Applications

8. In furtherance of the scheme, in or around April 2020, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, caused the Hotel Management Company to apply to a particular financial institution (the "Bank") for a PPP loan (the "2020 PPP Application"). The signature of MOSKOVITS, as CEO, appeared on the Hotel Management Company's application forms, certifying, among other things, that the PPP loan sought would be used "to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." In support of the application, the Hotel Management Company submitted, among other things, an "affiliate information" form that required that the Hotel Management Company list any businesses sharing common management or ownership as the Hotel Management Company. The form submitted by the Hotel Management Company listed three companies owned by LICHTENSTEIN and MOSKOVITS but omitted, among other companies, the Hotel Ownership Company and a

company involved in a residential development project in the Bronx (the "Bronx Residential Development Company").

9. In response to the 2020 PPP Application, in or around April 2020, the Bank funded a PPP loan to the Hotel Management Company in the amount of $1,438,000 (the "2020 PPP Loan"). Thereafter, at the direction of YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, the Hotel Management Company spent most of the 2020 PPP Loan funds for purposes that were not permitted under the PPP program, including to pay lawyers, architecture firms, a real estate lender, a real estate and titles services company, and for expenses of the Bronx Residential Development Company. For example, on or about August 29, 2020, MOSKOVITS sent a message to LICHTENSTEIN and others, stating "$15k to [real estate attorney] from PPP," to which LICHTENSTEIN responded "approved." Similarly, on or about September 22, 2020, MOSKOVITS sent a message to LICHTENSTEIN and others, stating "Please confirm $10k to [architecture firm] from PPP," to which LICHTENSTEIN responded "10k from ppp to [architecture firm]. direct from ppp to [architecture firm]."

10. In or around February 2021, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, caused the Hotel Management Company to apply to the Bank for forgiveness of the 2020 PPP Loan. The Hotel Management Company's forgiveness application certified that the "dollar amount for which forgiveness is requested . . . was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments)." The 2020 PPP Loan was subsequently forgiven by the SBA.

11. In or around January 2021, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, caused the Hotel Management Company to apply for a second PPP

4

loan. As with the first PPP loan application, in support of the second application, the Hotel Management Company submitted an "affiliate information" form that omitted the Hotel Ownership Company and the Bronx Residential Development Company.

12. On or about February 23, 2021, the Bank approved a second PPP loan to the Hotel Management Company in the amount of approximately $2,000,000 (the "2021 PPP Loan"). In the process of closing the 2021 PPP loan, however, the Bank identified a news article about a bankruptcy filing by the Hotel Ownership Company. The Bank contacted TOBY MOSKOVITS, the defendant, to request additional information about the relationship between the various companies owned by MOSKOVITS and YECHIAL MICHAEL LICHTENSTEIN, the defendants. In response, MOSKOVITS, copying LICHTENSTEIN, wrote, in substance and in part, that the Hotel Management Company and the Hotel Ownership Company were "unrelated entities." MOSKOVITS further wrote: "We need the PPP funds in order to get through this difficult period and to help pay the salaries of the 90 people that rely on us for their living wages." On the same date, LICHTENSTEIN, copying MOSKOVITS, emailed the Bank, falsely stating, in substance and in part, that, "[i]f you look at the first PPP loan that [the Hotel Management Company] received, all of it went to pay people's salaries and to cover payroll. None of it went for other purposes." In fact, LICHTENSTEIN and MOSKOVITS had used less than half of the 2020 PPP Loan to "to pay people's salaries and to cover payroll."

13. On or about February 25, 2021, the Bank informed TOBY MOSKOVITS, the defendant, that it had declined to issue the 2021 PPP Loan, noting that MOSKOVITS and YECHIAL MICHAEL LICHTENSTEIN, the defendants, had not disclosed their ownership interest in the Hotel Ownership Company in connection with either the 2020 PPP Loan or the 2021 PPP Loan.

5

The EIDL Applications

14.   In or around July 2020, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, caused the Hotel Management Company to apply to the SBA for an EIDL loan. In connection with the application, the signature of MOSKOVITS appeared on a loan authorization and agreement, certifying, among other things, that the Hotel Management Company would use the loan proceeds "solely as working capital to alleviate economic injury caused by" the COVID-19 pandemic.

15.   Later that month, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, were involved in an electronic group chat in which LICHTENSTEIN wrote, in substance and in part, "eidl loans are ONLY going to resi[dential] developemts (*sic*) that can pay it back." On or about the next day, the SBA funded an EIDL loan in the amount of $150,000 to the Hotel Management Company. On the same date, MOSKOVITS and LICHTENSTEIN transferred or caused to be transferred the EIDL funds awarded to the Hotel Management Company to a bank account held by another company owned by MOSKOVITS and LICHTENSTEIN and then transferred or caused to be transferred the EIDL funds to a bank account held by the Bronx Residential Development Company.

16.   During the next several days, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, used the proceeds of the EIDL loan for purposes other than working capital for the Hotel Management Company, including payments from the bank account held by the Bronx Residential Development Company to a real estate investment firm and a hat shop.

17.   In or around July 2021, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, caused the Hotel Management Company to apply for and obtain

an additional $350,000 in EIDL funds from the SBA. In connection with the application, the Hotel Management Company once again represented that it would use the loan proceeds "solely as working capital." As with the earlier EIDL funds awarded to the Hotel Management Company, LICHTENSTEIN and MOSKOVITS transferred or caused to be transferred the additional EIDL funds to a bank account held by a different company of theirs, and they then used the funds for purposes other than working capital for the Hotel Management Company, including a payment to a real estate investor.

18. On or about October 28, 2021, YECHIAL MICHAEL LICHTENSTEIN and TOBY MOSKOVITS, the defendants, caused the Hotel Management Company to apply to the SBA for an additional $1,087,800 in EIDL funds. The SBA denied the request.

**STATUTORY ALLEGATIONS**

19. From at least in or about March 2020 through at least in or about April 2022, in the Southern District of New York and elsewhere, YECHIAL MICHAEL LICHTENSTEIN, and TOBY MOSKOVITS, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) bank fraud, in violation of Title 18, United States Code, Section 1344.

20. It was a part and an object of the conspiracy that YECHIAL MICHAEL LICHTENSTEIN, and TOBY MOSKOVITS, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures,

7

and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, LICHTENSTEIN and MOSKOVITS engaged in a scheme to fraudulently obtain and attempt to obtain Government-guaranteed loans from the SBA and a financial institution through the PPP and EIDL programs, by making false statements in support of loan applications, and caused interstate wires to be sent through the Southern District of New York in furtherance of that scheme.

21. It was further a part and an object of the conspiracy that YECHIAL MICHAEL LICHTENSTEIN, and TOBY MOSKOVITS, the defendants, and others known and unknown, knowingly would and did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344, to wit, LICHTENSTEIN and MOSKOVITS engaged in a scheme to obtain and attempt to obtain, by means of false and fraudulent pretenses, representations, and documents, Government-guaranteed loans from a bank insured by the Federal Deposit Insurance Corporation ("FDIC").

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

22. The allegations set forth in paragraphs 1 to 18 are repeated and realleged, and incorporated by reference as if fully set forth herein.

23. From at least in or about March 2020 through at least in or about April 2022, in the Southern District of New York and elsewhere, YECHIAL MICHAEL LICHTENSTEIN, and

8

TOBY MOSKOVITS, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, LICHTENSTEIN and MOSKOVITS engaged in a scheme to fraudulently obtain and attempt to obtain Government-guaranteed loans from the SBA and a financial institution through the PPP and EIDL programs, by making false statements in support of loan applications, and caused interstate wires to be sent through the Southern District of New York in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Bank Fraud)

The Grand Jury further charges:

24. The allegations set forth in paragraphs 1 to 18 are repeated and realleged, and incorporated by reference as if fully set forth herein.

25. From at least in or about March 2020 through at least in or about April 2022, in the Southern District of New York and elsewhere, YECHIAL MICHAEL LICHTENSTEIN, and TOBY MOSKOVITS, the defendants, knowingly executed, and attempted to execute, a scheme and artifice to defraud a financial institution, as that term is defined in Title 18, United States Code, Section 20, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, LICHTENSTEIN and MOSKOVITS engaged in

9

a scheme to obtain and attempt to obtain, by means of false and fraudulent pretenses, representations, and documents, Government-guaranteed loans from a bank insured by the FDIC.

(Title 18, United States Code, Sections 1344 and 2.)

## FORFEITURE ALLEGATION

26. As a result of committing the offenses alleged in Counts One through Three of this Indictment, YECHIAL MICHAEL LICHTENSTEIN, and TOBY MOSKOVITS, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1)(A), any and all property constituting, or derived from, proceeds the defendants obtained directly or indirectly, as a result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

27. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

*Jay Clayton*
JAY CLAYTON
United States Attorney